| |
|---|
| **Butler v Marco Realty Assoc., LP** |
| 2024 NY Slip Op 31230(U) |
| April 10, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 156776/2017 |
| Judge: Margaret A. Chan |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | | | |
|---|---|---|---|
| **PRESENT:** | **HON. MARGARET A. CHAN** | **PART** | **49M** |
| | *Justice* | | |

------------------------------------------------------------------X

LARONE BUTLER,

                               Plaintiff,

                  - v -

MARCO REALTY ASSOCIATES, L.P., JAMES HUNT
CONSTRUCTION CO., INC., ALL-RITE CONSTRUCTION
CO., INC., ALWAYS FIRST, INC., and QCC
MAINTNENANCE INC.,

                               Defendants.

------------------------------------------------------------------X

MARCO REALTY ASSOCIATES, L.P.

                       Third Party Plaintiff,

              -against-

ALWAYS FIRST, INC. and QCC MAINTENANCE INC.

                       Third Party Defendants.

------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 156776/2017 |
| **MOTION DATE** | 06/02/2023, 06/02/2023, 06/02/2023, 06/02/2023 |
| **MOTION SEQ. NO.** | 005 006 007 008 |

**DECISION + ORDER ON MOTION**

Third-Party
Index No. 595506/2018

The following e-filed documents, listed by NYSCEF document number (Motion 005) 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 252, 256, 274, 275, 276, 277, 278, 279, 280, 281, 282, 283, 284, 293, 301, 305, 308, 330

were read on this motion to/for                  JUDGMENT - SUMMARY          .

The following e-filed documents, listed by NYSCEF document number (Motion 006) 232, 233, 234, 235, 236, 237, 238, 239, 240, 241, 242, 243, 244, 245, 246, 247, 248, 249, 250, 257, 285, 286, 287, 288, 289, 290, 291, 296, 297, 302, 306, 324, 325, 326, 331, 334, 335, 336, 339, 340, 341, 342, 358, 393, 394

were read on this motion to/for                  JUDGMENT - SUMMARY          .

The following e-filed documents, listed by NYSCEF document number (Motion 007) 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 220, 221, 222, 223, 224, 225, 226, 227, 228, 229, 230, 231, 254, 258, 292, 294, 295, 298, 299, 300, 303, 322, 323, 332, 337, 343, 344, 345, 346, 347, 348, 349, 350, 351, 352, 353, 354, 355, 356, 357, 360, 361, 362, 363, 364, 365, 366, 367, 368, 369, 370, 371, 372, 373, 374, 375, 376, 377, 378, 379, 380, 381, 382, 383, 384, 385, 386, 387, 388, 389, 390, 391, 392

were read on this motion to/for                  JUDGMENT - SUMMARY          .

**156776/2017 BUTLER, LARONE vs. MARCO REALTY ASSOCIATES, L.P.**
**Motion No. 005 006 007 008**

Page 1 of 19

1 of 19

[* 1]

The following e-filed documents, listed by NYSCEF document number (Motion 008) 179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 253, 259, 261, 262, 263, 264, 265, 266, 267, 268, 269, 270, 271, 272, 273, 304, 333, 338, 359

were read on this motion to/for                    JUDGMENT - SUMMARY                    .

Plaintiff Larone Butler, an employee of defendant Always First, Inc. (Always First), was allegedly injured on November 22, 2016, when working on a construction project at 360 E. Fordham Road, Bronx County, New York, NY (the Project). This premises was owned by defendant Marco Realty Associates, L.P. (Macro Realty) and leased to defendant Old Navy, LLC (Old Navy). Old Navy's parent company the Gap, Inc. (the Gap) hired James Hunt Construction Co., Inc. (James Hunt) as general contractor for interior renovation. (James Hunt, Macro Realty, the Gap, Old Navy are referred to in this Order as "the building defendants.") James Hunt in turn subcontracted with QCC Maintenance Inc. (QCC) and Always First for demolition work. Meanwhile, Macro Realty also hired All-Rite Construction Co., Inc. (All-Rite) for demolition work.

This Decision and Order addresses motion sequences (MS) 005-008, where the parties move for summary judgment on (i) plaintiff's Labor Law §§ 200, 240 (1), and 241 (6) claims and negligence claim, and (ii) the building defendants' cross claims and third-party claims for contractual indemnification, breach of contract, and common law indemnification and contribution. All motions are opposed.

## BACKGROUND

Plaintiff Larone Butler alleges that he was injured on November 22, 2016, while working on the Project (NYSCEF # 29 – verified amended compl. ¶ 209). The Project was to build out and install interior finishes for Old Navy, a tenant in the subject building (NYSCEF # 189 – Hinton tr at 14).

*Parties' Relationships and Responsibilities*

At the time on plaintiff's incident, James Hunt's site superintendent was Bill Hellbusch, who had the responsibility to oversee site safety and day-to-day construction activities (*id.* at 19-20, 23, 25). James Hunt's senior project manager then was Richard Hinton, who usually visited the site every two to three weeks to check construction progress (*id.* at 10, 21-22). James Hunt subcontracted with QCC for demolition work and hired Always First to supplement QCC's work, because certain work, such as rock breaking, went beyond QCC's capabilities (*id.* at 25-27). QCC and Always First' work on the jobsite overlapped in time (*id.* at 25).

Before James Hunt and its subcontractors started working on the Project, Macro Realty—the owner and landlord of the premises—engaged All-Rite as general contractor to "prep[] the shell of the building for Old Navy to take possession" (*id.* at 28-30; NYSCEF # 246 – Zysman tr at 16). All-Rite was responsible for demolition and removal work, structural support work, and flooring

**156776/2017  BUTLER, LARONE vs. MARCO REALTY ASSOCIATES, L.P.**
**Motion No.  005 006 007 008**

Page 2 of 19

[* 2]

repairs (Hinton tr at 30; Zysman tr at 17). All-Rite subcontracted with other trades to "safe off electric" and "safe off all the plumbing" (Zysman tr at 17, 21). All-Rite worked at the Project from the beginning of 2016 to July 2016 (*id.* at 16, 29). During that period, a partner at All-Rite, Gregg Zysman, would visit the Project site about once a week to check any safety or quality issues (*id.* at 22).

*Contractual Indemnification Clauses*

James Hunt's contracts with Always First and QCC contained the same indemnification clause, which provided that:

> 4.7.1 Subcontractor shall defend, indemnify and hold General Contractor forever harmless from and against any and all claims . . . being filed or asserted against General Contractor, Owner, Tenant, Landlord, the Premises, Building, Property or Work, arising out of or in connection with the Work of this Agreement or the breach by Subcontractor of any term or condition of this Agreement.

> 4.7.2 Subcontractor shall defend, indemnify, and hold harmless General Contractor . . . from and against all claims . . . asserted against . . . General Contractor by reason of (i) injury to or death of any person, including, but not limited to, employees of Subcontractor and / or (ii) loss of or damage to property arising out of or resulting from or attributable in any way to any aspect of the performance of the Subcontractors' work under this agreement, regardless of whether or not such bodily injury, claim, damage, loss or expense is caused in whole or in part by the negligence, gross negligence, or willful act of Subcontractor or from breach of this Agreement by Subcontractor.

(NYSCEF #s 227, 228, § 4.7).

For both contracts, the term "General Contractor" meant James Hunt and the term "Owner, Tenant, or Landlord" meant the Gap (NYSCEF #s 227, 228 at 1). "Subcontractor" meant Always First and QCC respectively (*id.*). For Always First's contract, "Work" was defined as rock breaking (NYSCEF # 227, § 8.2). For QCC, "Work" referred to demolition (NYSCEF # 228, § 8.2). According to the building defendants, James Hunt's contract with QCC included demolition drawings of the subject building along with demolition keynotes (NYSCEF # 386). One of such keynotes on the sub-cellar floorplan stated that "abandoned base building utility lines & piping at sub-cellar [were] to be removed in their entirety" (*id.* at 1, n 22).

Marco Realty's contract with All-Rite contained no indemnification clause (NYSCEF # 230 at 1-3). But All-Rite's contract with its plumbing subcontractor Village Plumbing & Heating had an indemnification provision (*id.* at 11).

*The Accident*

**156776/2017   BUTLER, LARONE vs. MARCO REALTY ASSOCIATES, L.P.**
**Motion No.  005 006 007 008**

Page 3 of 19

3 of 19

[* 3]

Plaintiff worked for Always First at the Project site and was primarily responsible for rock breaking work including "breaking the foundation and going down into the earth" and "making square holes in the ground" (NYSCEF # 174 – Butler tr at 35, 66). Plaintiff performed such work in the subcellar of the subject building about three days a week (*id.* at 132-133).

On the day of the accident, November 22, 2016, plaintiff was instructed by his supervisor at Always First, Wilfredo Morales, to continue ground-breaking work in the sub-cellar (*id.* at 73, 86-87). At the time, there were many pipes in the sub-cellar's ceiling (*id.* at 117). At about 8:00 a.m. that morning, plaintiff went down to the sub-cellar and saw a worker named David cutting a pipe with a sawzall in his hand while standing on a ladder (*id.* at 67, 118-120, 140-142, 166). Plaintiff recalled that David was an African American male whom plaintiff had observed taking instructions from James Hunt several times (*id.* at 112, 127). After plaintiff saw David cutting the pipe, David "immediately stopped what he was doing to let [plaintiff] set up and occupy that workspace" (*id.* at 114). This left the pipe partially cut and hanging off a hanger in the 12-feet high ceiling (*id.* at 117-119, 142-143, 146, 171). Plaintiff then started working on the floor of the sub-cellar, about six feet away from where David previously worked (*id.* at 119, 166).

Around 10 a.m. that day, plaintiff was standing next to a hole that Always First was excavating in the ground, waiting for his turn to get into the hole (*id.* at 92-93, 100). As he waited, a silver pipe of about eight inches wide and ten feet long fell on plaintiff and hit his lower head and neck (*id.* at 95, 99). After being hit, plaintiff looked up and saw that the pipe fell from "the slab" in the ceiling (*id.* at 124). Plaintiff recognized that the pipe was the one that David previously worked on because the pipe appeared to be cut and "it [was] the only silver pipe that [was] up there in the ceiling" (*id.* at 117-118, 166-167). Plaintiff then called Morales to report the accident (*id.* at 100). Morales in turn informed Always First's owner Fabio Salazar of this incident (NYSCEF # 217 – Salazar tr at 29). Salazar testified that Morales told him the accident happened during plaintiff's lunch break (*id.*).

Plaintiff alleged that because of the accident, he suffered injuries in his cervical spine, lumber spine, and both shoulders (NYSCEF # 275 at 7-12). During his deposition, plaintiff testified that David worked for James Hunt because he saw David taking directions from James Hunt (Butler tr at 112, 127). However, Hinton from James Hunt testified that he was not familiar with a man named David working at the Project (NYSCEF # 216 – Hinton tr at 10, 57). Hinton further testified that, as shown in the demolition drawings and demolition keynotes, QCC was contractually required to demolish and remove the subject pipe (*id.* at 59-60, 66, 80; NYSCEF # 386 at 1, n 22). That said, Hinton recalled that on the day of the accident, there were no QCC employees working in the sub-cellar area (Hinton tr at 63-64). QCC's president Anthony LaPuma also asserted that QCC had no employees by the name of David or any African American employees working on the Project (NYSCEF # 326 – LaPuma aff, ¶¶ 5-6).

**156776/2017   BUTLER, LARONE vs. MARCO REALTY ASSOCIATES, L.P.**
**Motion No.  005 006 007 008**

Page 4 of 19

4 of 19

[* 4]

When deposed, LaPuma testified that QCC had finished its work at the Project and left the jobsite on October 28, 2016, a month before the accident took place (NYSCEF # 222 – LaPuma tr at 26, 31). Conversely, Hinton averred that the presence of the subject pipe at the site on the day of the accident indicated that QCC had not completed its work at the Project (Hinton tr at 81-82). And based on a document named GC Weekly Status Update, only 98% of demolition work was completed as of November 11, 2016 (NYSCEF # 349). To this, LaPuma testified that if a utility pipe was "live" or "hot," QCC's workers could have been instructed not to touch it and leave it for an electrician to remove (LaPuma tr at 22:15-25, 23:13-24).

*Procedural History*

Plaintiff commenced this action in July 2017 (NYSCEF # 1) and filed an amended complaint in July 2018 (NYSCEF # 29). The amended complaint asserted a claim for negligence and claims under Labor Law §§ 200, 240 (1), and 241 (6) against all defendants (*id.*). In James Hunt's answer to plaintiff's complaint, it asserted four cross claims against All-Rite (NYSCEF # 200 at 4-7), which are: (i) common law contribution, (ii) common law indemnification, (iii) contractual indemnification, and (iv) specific performance under contract. In addition, Marco Realty and James Hunt brought a third-party action against Always First and QCC, asserting claims for contractual indemnification, breach of contract, common law contribution and indemnification (NYSCEF # 25). Plaintiff filed the note of issue on April 5, 2023 (NYSCEF # 129).

In the instant motions (MS 005-008), plaintiff moves for partial summary judgment on his Labor Law § 240 (1) claim against the building defendants (MS 008); all defendants countermove for summary judgment dismissing all plaintiff's claims (MS 005-007). The building defendants move for summary judgment on their contractual indemnification claims against All-Rite, Always First, and QCC (MS 007). All-Rite, Always First, and QCC move for summary judgment dismissing all cross claims and third-party claims against them (MS 005-006). QCC's motion was filed as a cross motion to All-Rite's summary judgment motion (NYSCEF #s 324-326). All motions are opposed.

## DISCUSSION

On a motion for summary judgment, evidence presented must be examined "in the light most favorable to the non-moving party" (*Schmidt v One New York Plaza Co. LLC*, 153 AD3d 427, 428 [2017]). "It is well settled that 'the proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact' " (*Pullman v Silverman*, 28 NY3d 1060, 1062 [2016], quoting *Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). "Failure to make such showing requires denial of the motion, regardless of the sufficiency of the opposing papers" (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]).

If the moving party makes this initial showing, the burden shifts to the opposing party to rebut the prima facie showing by producing evidentiary proof in

156776/2017   BUTLER, LARONE vs. MARCO REALTY ASSOCIATES, L.P.
Motion No.  005 006 007 008

Page 5 of 19

5 of 19

[* 5]

admissible form sufficient to require a trial of material issues of fact (*Cabrera v Rodriguez*, 72 AD3d 553, 553-554 [1st Dept 2010]). Hearsay evidence may be utilized to raise a question of fact as long as it is not the only evidence submitted (*Sumitomo Mitsui Banking Corp. v Credit Suisse*, 89 AD3d 561, 564 [1st Dept 2011]). In the presence of a genuine issue of material fact, a motion for summary judgment must be denied (*see Rotuba Extruders v Ceppos*, 46 NY2d 223, 231 [1978]; *Grossman v Amalgamated Haus. Corp.*, 298 AD2d 224, 226 [1st Dept 2002]). Issues of credibility are for the fact finders to resolve, except in rare cases where testimony is "utterly incredible as a matter of law" (*Price v City of New York*, 172 AD3d 625, 629 [1st Dept 2019]).

Here, as an initial matter, the building defendants rely on *Price* to argue that they are entitled to summary judgment dismissing all plaintiff's claims because plaintiff's testimony is incredible as a matter of law (*id.*; NYSCEF # 197 – MS 007 at 3-6). Such reliance is misplaced. The alleged inconsistencies in plaintiff's testimony are not irreconcilable, nor are they utterly incredible as a matter of law for being "manifestly untrue, physically impossible, or contrary to common experience" (*Price*, 172 AD3d at 629). Therefore, the court declines to grant the building defendants' motion for summary judgment on this ground.

Below, plaintiff's claims under Labor Law §§ 240 (1), 241 (6), 200, and common law negligence, as well as the building defendants' cross claims and third-party claims for contractual indemnification, breach of contract, and common law indemnification and contribution are addressed.

## I. Plaintiff's Claims Against the Building Defendants

### *Labor Law § 240 (1) Claim (MS 007, 008)*

In MS 008, plaintiff moves for partial summary judgment in his favor on the Labor Law § 240 (1) claim (NYSCEF # 182). In MS 007, the building defendants move for summary judgment dismissing this claim (NYSCEF # 197). Both motions are accompanied by expert affidavits (NYSCEF # 183 – pltf's expert aff and resume; NYSCEF #s 346, 347 – defts' expert aff and resume) and are opposed by the other side (NYSCEF #s 261, 292). For the reasons below, plaintiff's motion for partial summary judgment on the Labor Law § 240 (1) claim (MS 008) is granted.

Labor Law § 240 (1) imposes an absolute and nondelegable duty on owners and contractors to provide certain safety devices, such as "scaffolding, . . . pulleys, braces, irons, ropes" to protect a person performing labor work "in the erection, demolition, repairing, altering . . . of a building or structure" (Labor Law § 240 [1]). This statute was designed to protect workers from "harm directly flowing from the application of the force of gravity to an object or person" (*John v Baharestani*, 281 AD2d 114, 118 [1st Dept 2001]). Application of Labor Law § 240 (1) is limited to "specific gravity-related accidents [such] as falling from a height or being struck by a falling object that was improperly hoisted or inadequately secured" (*Ross v Curtis-Palmer Hydro-Electric Co.*, 81 NY2d 494, 500-501 [1993] [internal quotation and citation omitted]). In other words, Labor Law § 240 (1) does not apply unless the

**156776/2017  BUTLER, LARONE vs. MARCO REALTY ASSOCIATES, L.P.**
**Motion No.  005 006 007 008**

**Page 6 of 19**

6 of 19

injury is "directly attributable to a risk posed by a physically significant elevation differential" (*Runner v New York Stock Exch., Inc.*, 13 NY3d 599, 605 [2009]).

To prevail on summary judgment in a Labor Law § 240 (1) "falling object" case, an injured worker must demonstrate that "at the time the object fell, it either was being hoisted or secured, or required securing for the purposes of the undertaking" (*Fabrizi v 1095 Ave. of Americas, L.L.C.*, 22 NY3d 658, 663 [2014] [internal citations and quotations omitted]). Plaintiff must also show that the object fell and injured the worker "because of the absence or inadequacy of a safety device of the kind enumerated in the statute," such as ropes and pulleys (*id.; see Narducci v Manhasset Bay Assoc.*, 96 NY2d 259, 268-269 [2001]; *see Wilinski v 334 E. 92nd Hous. Dev. Fund Corp.*, 18 NY3d 1, 9 [2011]).

Here, plaintiff argues that the half-cut pipe hanging in the ceiling above the hole that plaintiff would excavate was an object that required securing for the purpose of plaintiff's undertaking (NYSCEF # 182 at 5, NYSCEF # 292, ¶¶ 17, 19). Plaintiff relies on his expert witness Kathleen V. Hopkins's affidavit to contend that the proximate cause of plaintiff's injury was the lack of safety device such as stays and ropes securing the pipe to the ceiling (NYSCEF # 182 at 5, NYSCEF # 183 at 5).

Conversely, the building defendants assert that the subject pipe did not require securing because the pipe was part of the demolition project and "the provision of a safety device to prevent the pipe from being removed would have precluded that work" (NYSCEF # 197 at 15; NYSCEF # 261, ¶¶ 24, 31; NYSCEF # 346, ¶ 11). As to the issue of proximate cause, the building defendants claim that "it was not foreseeable that this pipe would have fallen out of nowhere" (NYSCEF # 197 at 15). Their expert witness Bernard P. Lorenz opines that "[p]laintiff cannot show why the pipe fell or that it fell due to a lack of a safety device" (NYSCEF # 346, ¶ 11). Additionally, the building defendants argue that the fall of the pipe did not involve a " 'physically significant' elevation differential" (NYSCEF # 197 at 15).

In falling object cases, courts have consistently held that objects several feet above the work area of injured workers require securing for purposes of the injured worker's undertaking (*see Diaz v Raveh Realty, LLC*, 182 AD3d 515 [1st Dept 2020] [falling plywood from the ceiling when being stripped off, hitting plaintiff who was working on the floor, was an object that required securing]; *Gonzalez v Paramount Group, Inc.*, 157 AD3d 427, 428 [1st Dept 2018] [falling cinderblocks from above into hole below injured worker]; *see also Stawski v Pasternack, Popish & Reif*, 54 AD3d 619, 620 [1st Dept 2008] [same]). Under these circumstances, the falling objects are also the proximate cause of plaintiff's injury (*see Diaz*, 182 AD3d at 516 ["plaintiff's injury was the foreseeable consequence of the risk of performing the task without any safety device of the kind enumerated in the statute"]; *Humphrey v Park View Fifth Ave. Assoc. LLC*, 113 AD3d 558, 559 [1st Dept 2014] [finding that plaintiff's "testimony demonstrates that the [falling object] came from somewhere above plaintiff and was a proximate cause of his injuries"]).

**156776/2017   BUTLER, LARONE vs. MARCO REALTY ASSOCIATES, L.P.**
**Motion No.  005 006 007 008**

Page 7 of 19

7 of 19

Applying these standards, plaintiff has established prima facie entitlement to summary judgment on the Labor Law § 240 (1) claim. Plaintiff's testimony demonstrates that he was hit in his lower head and neck by a partially cut pipe falling from the 12-foot-high ceiling of the sub-cellar while standing underneath the pipe, awaiting his turn to enter a hole on the ground to excavate it (*see* Butler tr at 92, 95, 99, 171). Since plaintiff was required to work underneath the half-cut pipe hanging on the ceiling, the pipe required securing for the purpose of plaintiff's undertaking (*see Diaz*, 182 AD3d at 515-516).

The record indicates that the lack of securing of the pipe was the proximate cause of plaintiff's injury, which was a foreseeable consequence of the risks of leaving the pipe unsecured and hanging on the ceiling (*see id.; see also* NYSCEF # 183 at 5 [expert witness Hopkins opines that the failure to secure the pipe is the proximate cause of the accident]). Although the building defendants argue that plaintiff "cannot show why the pipe fell" (NYSCEF # 346, ¶ 11), "plaintiff is not required to show the exact circumstances of the fall of the material" (*Salcedo v Sustainable Energy Options, LLC*, 190 AD3d 439, 439 [1st Dept 2021]).

In opposition, the building defendants fail to raise an issue of fact precluding summary judgment in plaintiff's favor. The building defendants suggest that material inconsistencies exist in plaintiff's testimony that (i) he saw David cutting a pipe using a sawzall and that (ii) David stopped working when plaintiff came downstairs (NYSCEF # 261, ¶ 4). However, these events can happen in close temporal proximity and are reconcilable. The building defendants also allege that plaintiff was inconsistent in first stating that David's ladder was right by the hole, and then testifying that the ladder was less than six feet away from the hole (*id.* ¶ 6). These statements are not contradictory either. Other alleged inconsistencies raised by the building defendants, such as plaintiff's recollection about David's co-worker (*id.* ¶¶ 5, 7, 8) are not relevant for plaintiff's Labor Law 240 (1) claim.

The building defendants also question plaintiff's statement that he was working when hit by the pipe (NYSCEF # 261, ¶ 19) because Salazar testified that he learned from Morales that plaintiff was on lunch break when the accident happened (Salazar tr at 29:8-13). However, this hearsay evidence may not be considered unless "it is not the only proof submitted," which is not the case here (*Sumitomo Mitsui Banking Corp.*, 89 AD3d at 564). And even if plaintiff were on lunch break when being hit, he may still prevail on the Labor Law § 240 (1) claim (*see Morales v Spring Scaffolding, Inc.*, 24 AD3d 42, 48 [1st Dept 2005] [under some circumstances, "Labor Law § 240 [1] applies to the lunch break accident"]).

The building defendants' contention that the half-cut pipe required no securing because it was part of a demolition project is unpersuasive. While "imposing liability for failure to provide protective devices to prevent the . . . objects from falling, when their fall was the goal of the work, would be illogical" (*Wilinski*, 18 NY3d at 11), this is only true where the falling objects "were themselves the target of demolition *when they fell*" (*id.* [emphasis added]), and the fall of the objects was "the goal of the demolition work *being performed*" (*Abad v Brookfield*

**156776/2017   BUTLER, LARONE vs. MARCO REALTY ASSOCIATES, L.P.**
**Motion No.  005 006 007 008**

Page 8 of 19

8 of 19

[* 8]

*Properties OLP CO. LLC*, 190 AD3d 471 [1st Dept 2021] [emphasis added]). Here, the pipe did not fall *when being cut or demolished*. In fact, halfway through cutting the pipe, David stopped the work and left the pipe hanging on the ceiling for two hours without securing it (*see* Butler tr at 67, 100, 114, 142-143). The goal of the demolition project was not for the pipe to fall two hours after it was partially cut. Thus, before the demolition work on the pipe was resumed, the pipe required securing under Labor Law § 240 (1).

Also unavailing is the building defendants' assertion that the fall of the pipe did not involve a physically significant elevation differential. In a similar pipe-falling case, the Court of Appeals found that a physically significant elevation differential existed in a 4-foot fall "given the amount of force the pipes were able to generate over their descent" (*Wilinski*, 18 NY3d 1, 2). Here, the pipe had fallen at least 4 feet before hitting plaintiff and was 8 inches wide and over 10 feet long, bigger than the 4 inches wide and 10 feet tall metal pipes in *Wilinski* (*id.* at 5; Butler tr at 95, 171). Thus, the elevation differential in the case is not *de minimis*.

Accordingly, plaintiff's motion for partial summary judgment on his Labor Law § 240 (1) claim against the building defendants (MS 008) is granted. The branch of the building defendants' motion for summary judgment dismissing plaintiff's Labor Law § 240 (1) claim (MS 007) is denied.

### *Labor Law § 241 (6) Claim (MS 007)*

In MS 007, the building defendants move for summary judgment dismissing plaintiff's Labor Law § 241 (6) claim (NYSCEF # 197 at 10-13). Plaintiff opposes (NYSCEF # 292, ¶¶ 43-53). For the reasons below, the building defendants' motion is denied to the extent that plaintiff's Labor Law § 241 (6) claim is predicated on Industrial Code § 23-3.3 (b) (3).

Labor Law § 241 (6) imposes a nondelegable duty on owners and contractors to provide reasonable and adequate protection for workers and to comply with specific safety rules set forth in the Industrial Code (*see St. Louis v Town of N. Elba*, 16 NY3d 411, 413 [2011]). To establish liability under Labor Law § 241 (6), "[t]he particular [Industrial Code] provision relied upon by a plaintiff must mandate compliance with concrete specifications and not simply declare general safety standards" (*Misicki v Caradonna*, 12 NY3d 511, 515 [2009]).

Here, in support of his Labor Law § 241 (6) claim, plaintiff initially alleges that the building defendants violated Industrial Code §§ 23-1.5, 23-1.7 (a) (1), 23-2.1, 23-2.3, 23-2.6, and 23-3.3 (NYSCEF # 202 – verified bill of particulars, ¶ 5). Later, when opposing the building defendants' summary judgment motion dismissing this claim, plaintiff bases his Labor Law § 241 (6) claim only on Industrial Code §§ 23-3.3 (b) (3) and (c) (NYSCEF # 292, ¶¶ 43-53). In reply, the building defendants argue that plaintiff has abandoned his Labor Law § 241 (6) claim except for the branch that predicates on Industrial Code §§ 23-3.3 (b) (3) and (c) (NYSCEF # 376, ¶ 37). To the extent that plaintiff fails to address previously raised Industrial Code violations, he is deemed to have abandoned that part of his

156776/2017  BUTLER, LARONE vs. MARCO REALTY ASSOCIATES, L.P.
Motion No.  005 006 007 008

Page 9 of 19

9 of 19

[* 9]

Labor Law § 241 (6) claim (*see Foley v Consol. Edison Co. of New York, Inc.*, 84 AD3d 476, 478 [1st Dept 2011]; *see Kempisty v 246 Spring St., LLC*, 92 AD3d 474, 475 [1st Dept 2012]).

As to the remaining Code violation, it is undisputed that Industrial Code §§ 23-3.3 (b) (3) and (c)—which apply to demolition by hand—are sufficiently specific to support a Labor Law § 241 (6) claim (*see Ortega v Everest Realty LLC*, 84 AD3d 542, 544 [1st Dept 2011]). Industrial Code § 23-3.3 (b) (3) provides that "[w]alls, chimneys and other parts of any . . . structure shall not be left unguarded in such condition that such parts may fall" (12 NYCRR 23-3.3 [b] [3]). Here, viewing the evidence in the light most favorable to the non-moving party, plaintiff's testimony at least raises a question of fact that the building defendants have violated Industrial Code § 23-3.3 (b) (3) by leaving the partially cut pipe hanging on the ceiling in a condition that it may fall (*see Wilinski*, 18 NY3d at 12 [denying defendants' motion for summary judgment dismissing the Labor Law § 241 [6] claim predicated on Industrial Code § 23-3.3 [b] [3] where plaintiff was hit by fallen metal pipes]; *see also Ortega v Everest Realty LLC*, 84 AD3d 542, 545 [1st Dept 2011]).

Turning to Industrial Code § 23-3.3 (c), this section requires "continuing inspections against hazards . . . created by the progress of the demolition work itself" (12 NYCRR 23-3.3 [c]). This provision only applies to hazards related to structural instability caused by the progress of the demolition, not hazards arising from the actual performance of the demolition work (*Smith v New York City Hous. Auth.*, 71 AD3d 985, 987 [2d Dept 2010] [Industrial Code § 23-3.3 [c] does not require "inspections of how demolition would be performed"]). Here, as in *Smith*, the subject pipe fell and injured plaintiff due to the actual performance of the demolition work, not structural instability caused by the progress of the demolition (*see id.; see* Butler tr at 95, 140-141). Therefore, Industrial Code § 23-3.3 (c) does not apply to the facts of this case.

As such, the branch of the building defendants' motion for summary judgment dismissing plaintiff's Labor Law § 241 (6) claim (MS 007) is denied as to Industrial Code § 23-3.3 (b) (3) and otherwise granted.

## *Labor Law § 200 and Negligence Claim (MS 007)*

Labor Law § 200 "is a codification of the common-law duty imposed upon an owner or general contractor to provide construction site workers with a safe place to work" (*Singh v Black Diamonds LLC*, 24 AD3d 138, 139 [1st Dept 2005] [internal citations omitted]). Liability under Labor Law § 200 may be based either upon (i) the means and method by which the work is performed or (ii) actual or constructive notice of a dangerous condition inherent in the premises (*see McLeod v Corp. of Presiding Bishop of Church of Jesus Christ of Latter Day Saints*, 41 AD3d 796, 797 [2d Dept 2007]; *see also Mendoza v Highpoint Assoc., IX, LLC*, 83 AD3d 1, 9 [1st Dept 2011]). A defendant has constructive notice of a hazardous condition on property "when the condition is visible and apparent and has existed for a sufficient

**156776/2017   BUTLER, LARONE vs. MARCO REALTY ASSOCIATES, L.P.**
**Motion No. 005 006 007 008**

Page 10 of 19

10 of 19

[* 10]

length of time to afford the defendant a reasonable opportunity to discover and remedy it" (*Griffin v PMV Realty, LLC*, 181 AD3d 912, 913 [2d Dept 2020]).

In the amended complaint, plaintiff asserts a Labor Law § 200 and common law negligence claim against the building defendants (NYSCEF # 205, ¶¶ 207, 210-212, 219). In MS 007, the building defendants move for summary judgment dismissing this claim arguing that they are not liable under Labor Law § 200 because they did not supervise the injury producing work and they lacked actual or constructive notice of the alleged dangerous condition relating to the pipe (NYSCEF # 197 at 6-10). Plaintiff disputes the latter point, asserting that the building defendants has failed to show that they lacked constructive notice of the hanging pipe because they have not produced evidence as to when the subject area was last inspected prior to plaintiff's accident (NYSCEF # 292, ¶¶ 55-58).

On a defense motion for summary judgment dismissing a Labor Law § 200 and common law negligence claim based on a dangerous premises condition, the moving defendants have the initial burden to establish that they lacked constructive notice of the dangerous condition by evidence of when the site had last been inspected before the accident (*Spencer v Term Fulton Realty Corp.*, 183 AD3d 441, 443 [1st Dept 2020]). For this purpose, "[m]ere reference to general cleaning practices, with no evidence regarding any specific cleaning or inspection of the area in question, is insufficient to establish a lack of constructive notice" (*Griffin*, 181 AD3d at 913).

Here, the building defendants submit no evidence as to when the sub-cellar was last inspected before the accident, thus failing to establish a lack of constructive notice of the subject pipe that had been hanging for two hours before it fell (*see Singh v Manhattan Ford Lincoln, Inc.*, 188 AD3d 506, 507 [1st Dept 2020] [defendants may have constructive notice on a dangerous condition that existed for two to three hours prior to plaintiff's accident]; *see Trinidad v Turner Constr. Co.*, 189 AD3d 565, 567 [1st Dept 2020] [denying summary judgment dismissing a Labor Law § 200 claim because evidence as to when the site was last inspected is lacking]). Although Hinton testified that Hellbusch occasionally conducted walkthroughs of the site (Hinton tr at 23),[1] this is insufficient to establish a lack of constructive notice because it only refers to James Hunt's general inspection practices not specific to the sub-cellar area (*see Griffin*, 181 AD3d at 913). Further, while the building defendants assert that they were not notified of any falling objects, and that there was no complaint about the subcellar (Butler tr at 168, 180; NYSCEF # 226, ¶ 12; NYSCEF # 376, ¶ 47), this, at best, indicates a lack of actual notice, not constructive notice.

Accordingly, the branch of the building defendants' motion for summary judgment dismissing plaintiff's Labor Law § 200 and common law negligence claim (MS 007) is denied.

---

[1] The building defendants cite to the wrong page of this deposition transcript (NYSCEF # 376, ¶ 48).

**156776/2017   BUTLER, LARONE vs. MARCO REALTY ASSOCIATES, L.P.**
**Motion No.  005 006 007 008**

Page 11 of 19

11 of 19

[* 11]

## II. Plaintiff's Claims Against All-Rite, Always First, and QCC (MS 005, 006)

In addition to his claims against the building defendants, plaintiff asserts the same set of claims—common law negligence, Labor Law §§ 200, 240 (1), and 241 (6)—against All-Rite, Always First, and QCC (NYSCEF # 29 at 36-37). In MS 005 and 006, All-Rite, Always First, and QCC[2] each moves to dismiss all of plaintiff's claims against them (NYSCEF #s 166, 233, 325).

Plaintiff does not oppose All-Rite and Always First's motions (NYSCEF #s 306, 308), and therefore is deemed to have abandoned his claims against All-Rite and Always First (*see Genovese v Gambino*, 309 AD2d 832, 833 [2d Dept 2003] [a claim is deemed abandoned if plaintiff did not oppose to defendant's motion for summary judgment dismissing the claim]). Plaintiff nevertheless opposes QCC's cross motion for summary judgment in its entirety, citing questions of fact as to QCC's role in the demolition of the subject pipe (NYSCEF # 358). The building defendants[3] and Always First also oppose QCC's cross motion, asserting that it was untimely filed, lacking in merits, and should be denied due to questions of fact (NYSCEF #s 339, 343).

As a gating issue, the timeliness of QCC's cross motion to All-Rite's summary judgment motion is addressed first. Generally, courts deny untimely summary judgment motions without considering the merits unless good cause for delay is shown (*see Brill v City of New York*, 2 NY3d 648, 653 [2004]). As an exception, however, an untimely cross motion may be considered on its merits without a showing of good cause, if it addresses "nearly identical" issues in a timely filed summary judgment motion (*see Connor v AMA Consulting Engineers PC*, 213 AD3d 483, 484 [1st Dept 2023], *lv to appeal dismissed in part, denied in part*, 40 NY3d 1088 [2024]; *see also Kershaw v Hosp. for Special Surgery*, 114 AD3d 75, 87 [1st Dept 2013]). For this purpose, it is essential that the subject motion is correctly labeled as a cross motion (*see Kershaw*, 114 AD3d at 87).

Here, QCC filed its cross motion on September 20, 2023 (NYSCEF # 325), five months after the note of issue was filed on April 5, 2023 (NYSCEF # 129). Without demonstrating any good cause for the delay, QCC claims that its untimely cross motion can be considered on the merits because it concerns "identical facts, issues and evidence" as raised in the summary judgment motions of All-Rite (NYSCEF # 325, ¶ 3). This is incorrect. "The problem . . . is that [QCC's] motion, in addition to being untimely, is not a true cross motion" (*see Kershaw*, 114 AD3d at 87). A cross motion is one that is made "against the party who made the original motion," namely, All-Rite (*see id.* at 87-88; *see* CPLR 2215). But here, QCC's "cross motion" contains nothing against All-Rite, and is entirely directed at plaintiff's amended complaint and the building defendants' third-party complaint. Thus, QCC's "cross

---

[2] QCC did not file its separate motion for summary judgment, it instead filed a cross motion in All-Rite's summary judgment motion (MS 006) (NYSCEF #s 325, 393).

[3] The building defendants incorrectly filed their opposition to QCC's cross motion in MS 007, as opposed to MS 006.

**156776/2017   BUTLER, LARONE vs. MARCO REALTY ASSOCIATES, L.P.**
**Motion No. 005 006 007 008**

**Page 12 of 19**

12 of 19

[* 12]

motion" is in fact an untimely summary judgment motion, which, without good cause shown, should be denied without considering the merits (*Kershaw*, 114 AD3d at 88, 90 [declining to consider an untimely motion because "[a]llowing movants to file untimely, mislabeled 'cross motions' without good cause shown for the delay, affords them an unfair and improper advantage"]; *see Brill*, 2 NY3d at 653).

In any event, many issues and arguments raised in QCC's motion are not "nearly identical" to those raised by All-Rite in its timely motion. For example, QCC and All-Rite's arguments on the contractual indemnification claim rest on entirely different contract terms (NYSCEF #s 228, 230). On the negligence claim, QCC's motion raises different factual issues than All-Rite's motion, relating to QCC's duty to remove the specific pipe at issue as well as QCC's relationship with David (NYSCEF #s 233, 325).

As such, QCC's motion is denied as untimely, without consideration of its merits (*see Crawford v 14 E. 11th St., LLC*, 191 AD3d 461 [1st Dept 2021] [denying a mislabeled cross motion as untimely without considering its merits as it did not raise issues nearly identical to those raised in a timely motion]; *see Rubino v 330 Madison Co., LLC*, 150 AD3d 603, 604 [1st Dept 2017] [same]).

In sum, the branches of All-Rite and Always First's summary judgment motions dismissing plaintiff's claims against them (MS 005, 006) are granted. QCC's untimely "cross motion" in MS 006 is denied. Plaintiff's claims for common law negligence, Labor Law §§ 200, 240 (1), and 241 (6) are dismissed against All-Rite and Always First, but not QCC.

### III. The Building Defendants' Contractual Indemnification Claims

The building defendants assert a claim for contractual indemnification against Always First and QCC in the third-party complaint (NYSCEF # 25). They also assert this claim as a cross claim against All-Rite in their answer to plaintiff's complaint (NYSCEF # 200 at 5). In MS 007, the building defendants move for summary judgment on this claim against Always First, QCC, and All-Rite (NYSCEF # 195). In MS 005 and 006, Always First, QCC, and All-Rite move for summary judgment dismissing this claim (NYSCEF #s 166, 233, 325). As discussed above, QCC's cross motion in MS 006 is rejected as untimely. The court now examines the motions made by the building defendants, Always First, and All-Rite.

*Cross Claim Against All-Rite (MS 006, 007)*

In MS 006, All-Rite moves for summary judgment dismissing the building defendants' contractual indemnification claim against it (NYSCEF # 233, ¶¶ 13, 25-28). The building defendants oppose MS 006 (NYSCEF # 285, ¶¶ 15-23) and in MS 007 move for summary judgment on this claim in their favor (NYSCEF # 197 at 20).

Based on the record, the building defendants' cross claim for contractual indemnification against All-Rite fails. Contrary to the building defendants' allegation, the contract between All-Rite and Marco Realty—or at least the copy of the contract the parties submitted—did not contain clauses for All-Rite to indemnify

**156776/2017   BUTLER, LARONE vs. MARCO REALTY ASSOCIATES, L.P.**
**Motion No.  005 006 007 008**

Page 13 of 19

13 of 19

[* 13]

Marco Realty (NYSCEF #s 230, 287). The indemnification provisions that the building defendants cite are in fact from All-Rite's contract with one of its subcontractors, Village Plumbing & Heating (NYSCEF # 230 at 11).[4] Those indemnification provisions required that Village Plumbing & Heating indemnify All-Rite "in the event an action is undertaken against [All-Rite] for violations of any governmental safety requirements by [Village Plumbing & Heating]" and are irrelevant to the building defendants' contractual indemnification claim against All-Rite (NYSCEF # 230 at 11).[5]

Therefore, the branch of All-Rite's motion for summary judgment dismissing the building defendants' contractual indemnification claim (MS 006) is granted. The building defendants' competing motion for summary judgment on this claim against All-Rite (MS 007) is denied.

### Third-Party Claim Against Always First (MS 005, 007)

In MS 007, the building defendants move for summary judgment against Always First on the contractual indemnification claim (NYSCEF # 197 at 18-19). Conversely, in MS 005, Always First moves for summary judgment dismissing this claim (NYSCEF # 166 at 4-6). For the reasons below, both motions are denied.

The contract between Always First and James Hunt (NYSCEF # 227) contains an indemnification provision, which provides that Always First shall indemnify James Hunt for claims asserted against James Hunt "by reason of injury to . . . any person . . . arising out of or resulting from or attributable in any way to any aspect of the performance of [Always First's] Work under this Agreement," regardless of whether Always First is at fault for causing such injury or breaching this contract with James Hunt (*id.* § 4.7.2). This contract defined Always First's work thereunder to be rock breaking (*id.* § 8.2).

The building defendants argue that plaintiff's injury arose out of his performance of Always First's work because plaintiff was injured when working for Always First to excavate the hole (NYSCEF # 197 at 18, NYSCEF # 360, ¶¶ 19-24, 34, 35). The building defendants add that they are entitled to contractual indemnification because they are not at fault for causing the accident (NYSCEF # 197 at 19; NYSCEF # 225, ¶¶ 3, 6-10; NYSCEF # 226, ¶¶ 5, 8-13).

Always First counterargues that the indemnification provision at issue is void under General Obligations Law (GOL) § 5–322.1 because it indemnifies the building defendants for their own acts of negligence (NYSCEF # 295 at 4; NYSCEF # 166 at 5). Further, "just because the pipe happened to fall on an Always First worker does not mean the accident arose out of Always First's work" (NYSCEF # 295 at 5; NYSCEF # 166 at 5). Always First also claims, without citing any

---

[4] All-Rite's purchase order and contract with Village Plumbing & Heating are pages 6 to 14 of NYSCEF Doc. No. 230. All-Rite's contract with Marco Realty are pages 1 to 3 of the same document.
[5] Even assuming that these provisions could be read into All-Rite's contract with Marco Realty, the building defendants have not submitted any evidence that All-Rite violated any governmental safety requirements when working at the site.

**156776/2017   BUTLER, LARONE vs. MARCO REALTY ASSOCIATES, L.P.**
**Motion No.  005 006 007 008**

Page 14 of 19

[* 14]

evidence, that "the accident was entirely attributable to [James Hunt's] own acts and omissions," as James Hunt was responsible for overhead protection and supervising other trades' work (NYSCEF # 295 at 5; NYSCEF # 166 at 5-6).

As a preliminary matter, among the building defendants, only James Hunt can be entitled to summary judgment on the contractual indemnification claim against Always First, because James Hunt is the only indemnitee under its contract with Always First (NYSCEF # 227; *see Herrero v 2146 Nostrand Ave. Assoc., LLC,* 193 AD3d 421, 424 [1st Dept 2021]).

GOL § 5–322.1 voids any contract clauses that indemnify the owner and general contractor for their own acts of negligence (General Obligations Law § 5-322.1 [1]). If the owner or general contractor is partially negligent, a contract clause indemnifying them is void under GOL § 5–322.1, unless it contains savings language that provides for partial indemnity (*see Itri Brick & Concrete Corp. v Aetna Cas. & Sur. Co.,* 89 NY2d 786, 790, 794-796 [1997]). In contrast, if the owner or general contractor is not actively negligent, an indemnification provision without a savings clause does not violate GOL § 5–322.1 even if it contemplates full indemnity (*Rhodes-Evans v 111 Chelsea LLC,* 44 AD3d 430, 434 [1st Dept 2007]).

Here, the indemnification clause between Always First and James Hunt contains no savings language and would have indemnified James Hunt even if it were negligent (NYSCEF # 227, § 4.7.2). Unlike *Rhodes-Evans,* the record here does not show that James Hunt is free of negligence as a matter of law (*see Rhodes-Evans,* 44 AD3d at 434). Specifically, questions of fact exist as to whether James Hunt had constructive notice of the pipe and whether James Hunt employed David who cut the pipe (*see* Butler tr at 67, 100, 112, 120, 127). If James Hunt is found to be negligent in any degree, its indemnity clause with Always First would be void under GOL § 5–322.1 (*see Itri Brick & Concrete Corp.,* 89 NY2d at 794-796). Given these triable issues of fact, James Hunt's motion for summary judgment on this claim (MS 007) is denied. That said, the court also rejects Always First's allegation that James Hunt was wholly at fault as a matter of law because Always First fails to cite any evidence for this assertion. As such, Always First's motion for summary judgment (MS 005) is likewise denied as to the contractual indemnification claim.

*Third-Party Claim Against QCC (MS 007)*

In MS 007, the building defendants move for summary judgment on their contractual indemnification claim against QCC (NYSCEF # 197 at 17). QCC opposes (NYSCEF # 322). James Hunt's contract with QCC required QCC to indemnify James Hunt for (i) claims "arising out of or in connection with the Work or this Agreement or the breach by [QCC] of any term or condition of this Agreement" (NYSCEF # 228, § 4.7.1) and (ii) claims asserted against James Hunt "by reason of injury to . . . any person . . . arising out of or resulting from or attributable in any way to any aspect of the performance of [QCC's] Work under this Agreement" (*id.* § 4.7.2). This contract defined QCC's work thereunder to be demolition (*id.,* preamble, § 8.2).

156776/2017   BUTLER, LARONE vs. MARCO REALTY ASSOCIATES, L.P.
Motion No.  005 006 007 008

Page 15 of 19

15 of 19

[* 15]

The building defendants argue that QCC was contractually required to indemnify them because QCC was responsible for removing the subject pipe (NYSCEF # 382, ¶¶ 11-13, 32, 33, 36, 37).[6] They point to (i) Hinton's testimony affirming that QCC was responsible for removing the pipe that injured plaintiff (Hinton tr at 59), and (ii) the demolition keynote that was allegedly part of QCC's contract, which provided that "abandoned base building utility lines & piping at sub-cellar [were] to be removed in their entirety" (NYSCEF # 386, at 1, n 22).

In opposition, QCC argues that plaintiff's claim did not arise from QCC's work because no QCC employees were on site on the day of the accident (NYSCEF # 322, ¶ 4 [2]). QCC adds that the last day of its work at the Project site was October 28, 2016 (NYSCEF # 326, ¶ 7; NYSCEF # 157 at 6-7 – QCC's worksheet and invoice). QCC points out that Hinton from James Hunt acknowledged that to the best of his knowledge, there were no QCC employees working in the sub-cellar on the day of the accident (Hinton tr at 63-64).

Applying the legal principles discussed above regarding Always First's liability for contractual indemnity, the court denies the building defendants' summary judgment on the contractual indemnification claim against QCC. Questions of fact exist as to whether plaintiff's claim arose out of QCC's work because while the building defendants rely on the demolition keynote to argue that QCC was responsible for removing the subject pipe, they provide no evidence that QCC performed the work that injured plaintiff or was even on site that day. QCC's witness LaPuma testified that QCC had finished its work on October 28, 2016, about a month before the accident (LaPuma tr at 31:8-19). And James Hunt's witness, Hinton, confirmed that on the day of the accident, no QCC employees worked in the sub-cellar (Hinton tr at 63-64). Such record at least creates a question of fact as to whether plaintiff's injury arose out of QCC's work.

The building defendants apparently suggest that because QCC was once designated to remove the pipe, it is contractually required to indemnify James Hunt regardless of whether it performed the injury-producing work (NYSCEF # 382, ¶ 11). This argument is unpersuasive. The indemnification clause at issue covers claims "arising out of . . . the Work . . . or the breach by [QCC] of . . . this Agreement" (NYSCEF # 228, § 4.7.1). Reading the clause as a whole, this provision requires that QCC indemnify James Hunt for QCC's actions or omissions—not someone else's. Thus, assuming that certain work initially designated to QCC was later performed by another trade, QCC is not required under this contract to indemnify James Hunt for claims arising out of the other trade's performance of work.

Accordingly, the branch of the building defendants' summary judgment motion on the contractual indemnification claim against QCC (MS 007) is denied.

---

[6] The building defendants' argument based on James Hunt's job detail report dated January 6, 2021 is rejected because the building defendants never include any citation for this report, despite referring to it in their brief and expert's affidavit (NYSCEF # 382, ¶ 37; NYSCEF # 383, ¶ 18).

**156776/2017   BUTLER, LARONE vs. MARCO REALTY ASSOCIATES, L.P.**
**Motion No.  005 006 007 008**

Page 16 of 19

## IV. The Building Defendants' Remaining Claims

*Third Party Claims Against Always First and QCC (MS 005, 006)*

In their third-party complaint, the building defendants raise claims for breach of contract as well as common law indemnification and contribution again"st Always First and QCC (NYSCEF # 25). Both Always First and QCC now move for summary judgment dismissing these claims (NYSCEF #s 166, 325). The building defendants oppose (NYSCEF #s 274, 343).

Initially, QCC's "cross motion" in MS 006 has been denied as untimely. In MS 005, Always First does not address the building defendants' breach of contract claim (NYSCEF # 166). Thus, the building defendants claims' against QCC and their claim for breach of contract against Always First are not dismissed. Next, the court examines the building defendants' claims for common law indemnification and contribution against Always First.

In MS 005, Always First argues that the building defendants cannot maintain common law claims against it because plaintiff did not sustain a grave injury (NYSCEF # 166 at 2-4). In opposition, the building defendants contend that questions of fact exist as to whether plaintiff's injury constitutes a grave injury and allege that they are free from negligence and therefore can be entitled to common law indemnification (NYSCEF # 274, ¶¶ 6-10).

Unless a worker sustains "grave injury," his or her employer cannot be held liable to third parties for common law indemnification and contribution claims on the worker's injuries within the scope of his or her employment (*see Clavin v CAP Equip. Leasing Corp.*, 156 AD3d 404, 404 [1st Dept 2017]). For this purpose, "[i]njuries qualifying as grave are narrowly defined in Workers Compensation Law § 11," which means "death, permanent and total loss of use or amputation of an arm, leg, hand or foot, loss of multiple fingers, loss of multiple toes, paraplegia or quadriplegia, total and permanent blindness, total and permanent deafness, loss of nose, loss of ear, permanent and severe facial disfigurement, loss of an index finger or an acquired injury to the brain caused by an external physical force resulting in permanent total disability" (*Castro v United Container Mach. Group, Inc.*, 96 NY2d 398, 401 [2001]; Workers' Compensation Law § 11).

Here, both the building defendants and Always First point to plaintiff's verified bill of particulars to argue whether the injuries at issue qualify as grave (NYSCEF # 275 at 7-12). The bill of particulars shows that plaintiff was injured on shoulders, lumbar spine, and cervical spine (*id.*). These are not among the grave injuries enumerated in Workers' Compensation Law § 11 (*see Eldoh v Astoria Generating Co., L.P.*, 24 Misc 3d 1214(A) [Sup Ct 2007], *affd sub nom. Eldoh v Astoria Generating Co., LP*, 57 AD3d 603 [2d Dept 2008] [injuries to the cervical spine and shoulders do not constitute grave injuries]). Therefore, based on the record, plaintiff did not suffer a grave injury from the accident and thus Always First is entitled to summary judgment dismissing third-party claims for common

156776/2017   BUTLER, LARONE vs. MARCO REALTY ASSOCIATES, L.P.
Motion No.  005 006 007 008

Page 17 of 19

law indemnification and contribution against it (*see Hernandez v Seadyck Realty Co., LLC*, 161 AD3d 711, 712 [1st Dept 2018]).

Accordingly, that branch of Always First's motion for summary judgment (MS 005) is granted.

*Cross Claims Against All-Rite (MS 006)*

The building defendants assert four cross claims against All-Rite: (i) common law contribution, (ii) common law indemnification, (iii) contractual indemnification, and (iv) specific performance under contract (NYSCEF # 200 at 4-7). In MS 006, All-Rite moves to dismiss all cross claims against it (NYSCEF # 233). The building defendants oppose on the common law indemnification and contribution claims and the contractual indemnification claim (NYSCEF # 285). Since the building defendants have not opposed on their claim for specific performance, they are deemed to have abandoned that claim (*see Genovese*, 309 AD2d at 833). Further, as discussed above, the building defendants' contractual indemnification claim against All-Rite fails. Now at issue are the building defendants' common law indemnification and contribution claims against All-Rite.

Both common law indemnification and contribution claims are predicated on a finding of negligence on the proposed indemnitor or contributor (*see Priestly v Montefiore Med. Ctr./Einstein Med. Ctr.*, 10 AD3d 493, 495 [1st Dept 2004] [a common law indemnity claim requires proof of some negligence on the part of the indemnitor]; *see Sommer v Fed. Signal Corp.*, 79 NY2d 540, 550 [1992] [the availability of a contribution claim depends on the threshold issue of negligence]). To prevail on a negligence claim, it must be shown that there is "(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom" (*Pasternack v Lab. Corp. of Am. Holdings*, 27 NY3d 817, 825 [2016]). Ultimately, "the law draws a line between remote possibilities and those that are reasonably foreseeable" (*Lee v New York City Hous. Auth.*, 25 AD3d 214, 217 [1st Dept 2005], citing *Di Ponzio v Riordan*, 89 NY2d 578, 583 [1997]).

Under these standards, All-Rite has established prima facie entitlement to summary judgment dismissing the building defendants' common law indemnification and contribution claims against it. Both claims are predicated on All-Rite's active negligence, however, All-Rite had finished its work on the project site four months before the accident (Zysman tr at 29, 57). Any causal link between All-Rite's work and plaintiff's injury is tenuous. The November 2016 accident is a remote possibility not reasonably foreseeable to All-Rite when it completed its work in July 2016. As such, All-Rite was not actively negligent for the incident.

Accordingly, the building defendants' claims against All-Rite for common law indemnification and contribution are dismissed (*see Higgins v TST 375 Hudson, L.L.C.*, 179 AD3d 508, 511 [1st Dept 2020] [dismissing common law indemnification and contribution claims against parties that were free from negligence]). That branch of All-Rite's motion for summary judgment (MS 006) is granted.

**156776/2017   BUTLER, LARONE vs. MARCO REALTY ASSOCIATES, L.P.**
**Motion No.  005 006 007 008**

Page 18 of 19

18 of 19

## CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that defendant All-Rite's motion for summary judgment dismissing all claims and cross claims against it (MS 006) is granted in its entirety; and it is further

ORDERED that plaintiff Larone Butler's motion for partial summary judgment on the Labor Law § 240 (1) claim is granted only as against defendants Marco Realty Associates, L.P., Old Navy, LLC, the Gap, Inc., and James Hunt Construction Co., Inc. (the Building Defendants) (MS 008); and it is further

ORDERED that the Building Defendants' motion for summary judgment (MS 007) is denied in all respects except for plaintiff's Labor Law § 241 (6) claim predicated on Industrial Codes other than § 23-3.3 (b)(3); and it is further

ORDERED that defendant Always First's motion for summary judgment (MS 005) is granted to the extent of dismissing plaintiff's complaint as against it and dismissing the Building Defendants' common law indemnification and contribution claims as against it, and Always First's motion (MS 005) is otherwise denied as to the Building Defendants' contractual indemnification claim as against it; and it is further

ORDERED that defendant QCC Maintenance Inc.'s untimely summary judgment motion, incorrectly labeled as cross motion in MS 006, is denied without consideration of its merits, and no claims or third-party claims against QCC are dismissed.

| 04/10/2024 | | |
|---|---|---|
| **DATE** | | **MARGARET A. CHAN, J.S.C.** |

| **CHECK ONE:** | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | DENIED | | GRANTED IN PART | X | OTHER |
| **APPLICATION:** | | SETTLE ORDER | | | SUBMIT ORDER | | |
| **CHECK IF APPROPRIATE:** | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**156776/2017 BUTLER, LARONE vs. MARCO REALTY ASSOCIATES, L.P.**
**Motion No. 005 006 007 008**

Page 19 of 19

19 of 19